EMPLOYEES COMMITTED FOR JUSTICE, Courtney Davis, Gladys Alston, Cynthia Gayden, Robert Gibson, Jannie Nesmith, Noralean Pringle, Carrie Rice, Maria Scott, Olin Singletary, and Edna Williams, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

EASTMAN KODAK COMPANY, Defendant.

No. 04–CV–6098.

United States District Court, W.D. New York.

Sept. 29, 2005.

Clayborne E. Chavers, The Chavers Law Firm, PC, Washington, DC, Judith Ann Biltekoff, Brown & Kelly, LLP, Buffalo, NY, Selim Ablo, Shanon J. Carson, Stephen A. Whinston, William T. Coleman, III, Berger & Montague, P.C., Philadelphia, PA, for Plaintiffs.

Judith E. Harris, Morgan, Lewis & Bockius LLP, Philadelphia, PA, Michael D. Thomas, Nixon Peabody LLP, San Francisco, CA, Robert B. Calihan, Jill K. Schultz, Eugene D. Ulterino, Nixon Peabody LLP, Rochester, NY, for Defendant.

## DECISION AND ORDER

FELDMAN, United States Magistrate Judge.

### Preliminary Statement

Currently before the Court is defendant Eastman Kodak Company's (hereinafter Kodak or defendant) motion to dismiss portions of the complaint filed by plaintiffs. (Docket # 33). Pursuant to 28 U.S.C. 636(c), the parties have consented to the jurisdiction of this Court for all further proceedings.

### Procedural Background

On November 12, 2003, plaintiff Courtney Davis filed a *pro se* complaint against Kodak in the Northern District of California alleging race discrimination. On March 10, 2004, the district court in California transferred the case to the Western District of New York. On March 16, 2004, Kodak answered Davis' complaint denying the allegations of discrimination. Thereafter, Davis retained counsel and entered into a stipulation with Kodak's counsel which, *inter alia*, extended plaintiff's time to file an amended complaint "that contains class allegations." *See* June 3, 2004 Stipulated Order (Docket # 27). On July 30, 2004, plaintiffs filed an amended complaint asserting class allegations and naming additional plaintiffs. (Docket # 29). In the amended complaint, plaintiffs seek to represent a class consisting of past, present, and future African American employees of Kodak. One of the additional plaintiffs added in the amended complaint was the "Employees Committed for Justice" (hereinafter "ECJ"), an unincorporated organization comprised of approximately one thousand past and present African American employees of Kodak who have claims of racial discrimination against Kodak.

### Relevant Factual Background

In the context of the instant motion to dismiss, the detailed factual allegations set forth in the complaint need not be repeated here. To the extent that the factual allegations are relevant to the legal

arguments of the parties, they will be set forth below as necessary to resolve the issue presented. Generally, however, the amended complaint alleges that "Kodak has engaged in an ongoing pattern and practice of discrimination against its African American Employees," including discrimination in compensation, promotions, wage and job classifications, and maintaining a hostile work environment. Plaintiffs also claim that "[w]hen African American employees of Kodak complain[ed] about" the discriminatory practices and policies to Kodak's management, they were "subjected to retaliation."

The amended complaint references and relies upon multiple "Letters of Determination" issued by the Equal Employment Opportunity Commission (EEOC) on February 6, 2004 and thereafter, which found, *inter alia,* that: (1) weekly pay rates for white employees of Kodak were consistently higher than weekly pay rates for black employees; (2) Kodak maintained a hostile work environment with respect to its African American employees; and (3) Kodak retaliated against African American employees who participated in protected activities. *See* Amended Complaint at ¶ 48.

### Discussion

Before turning to the specific issues Kodak has raised in its motion to dismiss, it is important to acknowledge the Court's well settled obligations in evaluating a Rule 12(b) motion to dismiss. First, the Court must accept the material allegations in the complaint as true. "Dismissal is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Second, at this stage of the litigation, the issue for the

Court "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.1996) (internal quotations and citations omitted). Finally, these evaluative rules apply "with particular force where the plaintiff alleges civil rights violations." *Chance v. Armstrong,* 143 F.3d at 701. With these established principles in mind, the Court turns to the specific arguments raised by Kodak.

*1. Pattern or Practice Claims of Hostile Work Environment:* Kodak contends that the "precise issue" to be decided in its 12(b) motion to dismiss is "whether the subjective component of hostile work environment claims renders such claims incompatible with pattern or practice adjudication." *See* Kodak Reply Memorandum (Docket # 65) at page 4, n. 3. Kodak argues that the answer to this question must be that *as a matter of law* the pattern or practice theory of liability is not available in discrimination cases claiming hostile work environment. "All the discovery in the world," Kodak argues, "will not change the conclusion [that] hostile work environment claims are inherently irreconcilable with pattern or practice adjudication as a matter of law due to their highly individualized and subjective nature." *Id.* at page 4.

 Claims of pattern and practice liability, such as those asserted here, "focus on allegations of widespread acts of intentional discrimination against individuals." *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 158 (2d Cir. 2001), *cert. denied,* 535 U.S. 951, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002). To sustain such a claim, plaintiffs must prove more than isolated, accidental or sporadic dis-

criminatory acts. *Id.* Rather, they must establish that intentional "racial discrimination was the company's standard operating procedure." *Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). A *prima facie* case of discrimination under the pattern and practice approach is established when the evidence supports a finding of a "policy, pattern, or practice of intentional discrimination against the protected group" or protected class. *Robinson,* 267 F.3d at 158. Class actions are uniquely suitable for litigating discrimination claims under the pattern and practice framework. *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 409 (5th Cir.1998) (class actions can be used "effectively to eradicate widespread or institutional-scale discrimination."). Indeed, some courts have held that the pattern and practice method of proof may never be utilized in private non-class suits. *See, e.g., Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 355 (5th Cir.2001); *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 760–61 (4th Cir.1998), *vacated on other grounds,* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999). Kodak's motion to dismiss plaintiffs' hostile work environment claims hinges on its argument that the pattern and practice methodology is legally incompatible and ultimately irreconcilable with the elements required to prove a racially hostile work environment. Relying on *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) and *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), Kodak argues that a plaintiff in a hostile work environment case must prove both an objective and subjective element to succeed under Title VII. The required objective element is that the conduct at issue must be so severe or pervasive as to create an "objectively" hostile work environment. The subjective element of proof is that the victim must "subjectively perceive" the work environment to be, in fact, abusive. *Richardson v. New York State Department of Correctional Service,* 180 F.3d 426, 436 (2d Cir.1999) (*quoting Harris v. Forklift Systems,* 510 U.S. at 21–22, 114 S.Ct. 367).

Kodak does not dispute that the objective element of a hostile work environment claim is consistent with the pattern and practice method of proof. Indeed, proof that a "workplace was permeated with instances of racially discriminatory conduct" (*Williams v. County of Westchester,* 171 F.3d 98, 100 (2d Cir.1999)), would also go a long way in supporting a claim that racial discrimination was the defendant's "standard operating procedure." *Int'l Bhd. of Teamsters v. United States,* 431 U.S. at 336, 97 S.Ct. 1843.

Instead, it is the *subjective* component of the hostile work environment claim that Kodak argues is antagonistic to pattern and practice proof. Kodak asserts that the pattern and practice theory of liability is not "viable" for Title VII harassment claims because unlike pattern and practice, which focuses on procedures, practices, and policies that impact an identifiable class or group of employees, the subjective element of a hostile work environment claim requires each victim to prove that the racial harassment was actually and subjectively unwelcome. *See Richardson,* 180 F.3d at 436. Because such "highly individualized" and subjective proof is not part of the pattern and practice equation, Kodak reasons that, as a matter of law, proving a hostile work environment by the pattern or practice methodology simply cannot be done. *See* Kodak's Memorandum of Law (Docket # 33) at pages 5–10 ("To attempt to make such a showing within the pattern-or-practice framework is akin to fitting a

square peg in a round hole."). Put differently, and in the context of assuming the truth of the factual allegations, the pattern or practice issue is this: If plaintiffs were to establish through objective proof that it was "standard operating procedure" for Kodak to routinely tolerate and allow its employees and supervisors to racially harass African American employees and "standard operating procedure" for Kodak to resist disciplining employees or supervisors who engaged in such racially offensive conduct, would such objective evidence be legally sufficient to hold Kodak liable for creating and maintaining a racially hostile work environment under Title VII?

Although neither the Supreme Court nor the Second Circuit has specifically addressed Kodak's "square peg in a round hole" argument, several district courts have. For example, in *EEOC v. Mitsubishi Motor Manufacturing of America*, 990 F.Supp. 1059 (C.D.Ill.1998), the EEOC sought to bring a Title VII pattern and practice sexual harassment claim on behalf of the plaintiffs who worked at a large automobile assembly plant. The EEOC alleged that Mitsubishi had a policy or practice of sexual harassment because it "created and maintained a sexually hostile and abusive work environment" in that it tolerated "individual acts of sexual harassment by its employees by refusing to take notice of, investigate, and/or discipline the workers who sexually harassed other employees." *Id.* at 1069. The court held: "If such a 'standard operating procedure' of unlawful tolerance within the company's confines exists, it constitutes a 'pattern and practice' of sexual harassment." *Id.*

In reaching this holding, the court rejected the employer's argument that the *Meritor* and *Harris* cases precluded proving a pattern or practice case of a hostile work environment because such claims must include proof that the offensive conduct was subjectively unwelcome. The court explained:

> Although it is true that *Meritor* and *Harris* require individuals, in an individual case of sexual harassment, to prove that the conduct they experienced was subjectively unwelcome, this is not an individual case; it is a pattern or practice case, and the rules of engagement in this context are different. The *Meritor* and *Harris* cases involved individual charges of sex discrimination alleging individual acts of sexual harassment. They were not and did not purport to be pattern or practice cases, and the holdings regarding the proofs necessary to establish an individual case of sexual harassment must, accordingly, be modified.

*Id.* at 1070. The court distinguished the factual paradigm relevant to individual claims of harassment and the entirely different rationale unique to pattern or practice cases. "[P]attern or practice cases are not like individual [hostile workplace] actions, even though individuals typically may be able to obtain relief based on a pattern or practice finding. Instead, pattern or practice cases target large scale, system-wide discriminatory practices and their effects, rather than simply intentional wrongs." *Id.* at 1076 (internal quotation and citation omitted).

> The purpose and effect of a successful pattern or practice case is to impose liability upon a private employer, not simply for individual wrongs, but for discriminatory policies created and maintained by an employer that result in a system-wide pattern or practice of disparate treatment against individuals who fall within a protected class.

*Id.* at 1077. Based on the clear differences, the court held that "[a] pattern or practice case [involving allegations of a

harassing or hostile work environment] can be established without the subjective showings required by *Meritor* and *Harris.*" *Id.* at 1076.

Similarly, in *EEOC v. Dial Corp.,* 156 F.Supp.2d 926 (N.D.Ill.2001), the defendant employer, like Kodak here, argued that "Title VII's pattern-or-practice theory of liability is not viable" in harassment cases because such "claims, by nature, are not suited to class treatment" and "no type of case in the discrimination area is as inherently individualized" as a hostile work environment case. *Compare EEOC v. Dial Corp.* 156 F.Supp.2d at 945 *with* Kodak's Memorandum of Law (Docket # 33) at page 5. As in *Mitsubishi,* the court rejected the employer's argument, holding that it "misinterpreted the nature of pattern-or-practice litigation." The court approved the ability of plaintiffs to utilize a "pattern or practice theory in litigating claims of systemic employment discrimination." *Id.* at 946. *See also EEOC v. Carrols Corp.,* 2005 WL 928634, *2 (N.D.N.Y. April 20, 2005) (*citing Mitsubishi* and *Dial Corp.,* court assumes for purposes of summary judgment motion, "that a plaintiff can bring a pattern-or-practice action for hostile work environment.")

The analysis of the pattern-or-practice mode of proving discrimination in the context of a hostile work environment claim as outlined in *Mitsubishi* and *Dial Corp.* is persuasive here. The amended complaint alleges that Kodak has a pattern and practice of racial harassment which resulted in and constitutes an ongoing hostile work environment. In this context, it is not whether there existed particular acts of racial harassment that were viewed as subjectively unwelcome by individual employees. Rather, the issue under the pattern or practice framework is whether there was a systemic culture of harassment and whether it was "standard operating procedure" to permit such conduct without consequences or discipline to those responsible. I determine that it is not necessary for each class member to introduce evidence that he or she found it "subjectively unwelcome" to be called "nigger"[1] or "black boy" or be taunted by racist graffiti and depictions of African–Americans hanging from nooses posted in work lockers, elevators and bathrooms in order to demonstrate the existence of a pervasive, systemic and widespread hostile work environment. In the pattern or practice context, such a requirement would create an evidentiary barrier that is inappropriate for establishing employer liability for racially offensive conduct against those within the protected class. It is "the landscape of the total work environment, rather than the subjective experiences of each individual claimant" that is the focus for establishing a company policy or practice of tolerating widespread and systemic discrimination in the workplace. *EEOC v. Mitsubishi Motor Mfg.,* 990 F.Supp. at 1074. *See also Warnell v. Ford Motor Company,* 189 F.R.D. 383 (N.D.Ill.1999) (no showing of subjective hostility required in case involving pervasive and widespread sexual harassment at employer's manufacturing facilities). As stated by the court in *Mitsubishi,* the *Meritor* and *Harris* cases concerned individual charges of harassment. When a pattern-or-practice theory is invoked to allege widespread and systemic racial harassment by an employer, the "rules of engagement" are necessarily different. *EEOC v. Mitsubishi Motor*

---

**1.** "[N]o single act can more quickly alter the conditions of employment and create an abusive work environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." *Richardson,* 180 F.3d at 439 (*quoting Rodgers v. Western–Southern Life Insurance Co.,* 12 F.3d 668, 675 (7th Cir.1993)).

*Manufacturing of America,* 990 F.Supp. at 1070.

Kodak's reliance on a "veritable legion" of cases in which courts "have rejected harassment claims in the class action context" is misplaced at this juncture of the litigation. *See* Kodak's Memorandum of Law (Docket # 33) at page 9.[2] Class allegations that an employer engages in or tolerates widespread and pervasive workplace harassment may prove to be particularly well-suited to the pattern or practice framework. Depending on the facts developed during discovery, the commonality requirement necessary for class certification under Rule 23 of the Federal Rules of Civil Procedure may or may not be satisfied. None of the six district court cases cited by Kodak stands for the proposition that prior to engaging in any discovery, a complaint alleging a pattern or practice of hostile work environment must be dismissed as a matter of law for failure to state a claim. Rather, all of the cases cited by Kodak rely on a fact specific record that was before the court. Moreover, just as there exist cases in which the commonality required for class certification was not met, so too are there a significant number of cases in which district courts, based on facts developed during discovery, *have* certified pattern or practice claims of widespread and discriminatory harassment by an employer. *See, e.g., Newsome v. Up–To–Date Laundry, Inc.,* 219 F.R.D. 356, 362 (D.Md.2004) (relying on *Mitsubishi,* court certified class, holding "[e]vidence of the subjective experiences of each class member is not necessary to support class-wide liability"); *Bremiller v. Cleveland Psychiatric Institute,* 195 F.R.D. 1, 21 (N.D.Ohio 2000) (commonality requirement met for class

certification despite fact that subjective perception of class members to employer's harassment may have differed); *Warnell v. Ford Motor Company,* 189 F.R.D. 383, 387 (N.D.Ill.1999) (relying on *Mitsubishi,* court certified class, holding it is the total work environment, not the subjective experiences of each claimant that is the focus of pattern or practice liability); *Markham v. White,* 171 F.R.D. 217, 222 (N.D.Ill.1997) (class may be certified in sexual harassment claim because while class members' subjective perceptions may be relevant to damages, not necessary to establish liability); *Jenson v. Eveleth Taconite Co.,* 824 F.Supp. 847, 875–76 (D.Minn.1993) (subjective unwelcomeness was not a required finding for Title VII sexual harassment class action pursued under pattern-or-practice theory).

None of the foregoing is to suggest that this case is or is not appropriate for class certification under Rule 23 of the Federal Rules of Civil Procedure. That is not the issue before the Court. The Court's holding is limited to the issue presented by Kodak, that is, whether plaintiffs are precluded, as a matter of law, from asserting class based claims of hostile work environment under a pattern or practice framework. I hold that they are not.

Finally, it is not necessary on this occasion for the Court to decide whether to integrate the burden shifting methodology utilized in phase two of pattern-or-practice cases into plaintiffs' class based hostile work environment claim. Pattern-or-practice litigation is normally divided into two phases: liability and remedial. In the first phase, the burden is on plaintiffs to prove that "unlawful discrimination has been a

---

**2.** A thorough analysis on the tensions inherent in integrating pattern or practice liability into Title VII harassment claims is found in a recent law review Note. *See* Healy, *Sexual Pattern: Why a Pattern or Practice Theory of Liability is not an Appropriate Framework for Claims of Sexual Harassment,* 10 Roger Williams U.L. Rev 537 (2005).

regular procedure or policy followed by an employer against a protected group or class of individuals." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. at 360, 97 S.Ct. 1843. A finding of pattern-or-practice discrimination ordinarily qualifies each protected group member to a presumption that they are entitled to individual relief (such as compensatory damages) and a "district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of the individual relief." *Id.* at 361, 97 S.Ct. 1843. During this second individual relief phase, the class member is entitled to a presumption of individual discrimination and the burden shifts to the employer to demonstrate that the individual was not subjected to unlawful discrimination. *Id.* at 362, 97 S.Ct. 1843. Assuming *arguendo* that the Court ultimately determines that this case is suitable for class certification, and assuming further that plaintiff is able to demonstrate a pervasive pattern or practice of racial harassment sufficient to prevail on the liability phase, the Court will then have to decide the evidentiary structure of the remedial proceeding. *Compare Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 875–76 (D.Minn.1993) (phase two presumption eliminated; once pattern or practice liability is established in phase one, each individual class member seeking relief must demonstrate that he or she was subjectively affected to be entitled to damages) *with EEOC v. Mitsubishi Motor Mfg.*, 990 F.Supp. at 1079 ("modified" presumption survives; employer has burden of production to "come forward with evidence to show that the individual members of the potential class, either in whole or in part, did not subjectively perceive the environment as hostile."). In any event, this Court need not decide the structure of phase two at this juncture and will not do so without allowing both parties the opportunity for full briefing on the issue.

■ *2. Pattern or Practice Claims of Retaliation:* Kodak claims that plaintiffs' class-wide retaliation claims suffer from the same legal infirmities evident in their hostile work environment allegation and, therefore, are "ill-suited for prosecution under the pattern-or-practice rubric." *See* Kodak's Memorandum of Law (Docket # 33) at page 10. However, at this stage of the proceedings, Kodak's arguments are ill-suited for resolution as a matter of law.

None of the cases cited by Kodak stands for the proposition that, as a matter of law, Title VII retaliation claims cannot be brought under the pattern-or-practice rubric. To be sure, after discovery and based upon a fully litigated motion for class certification, courts have determined that the evidence developed does not support a claim of class-wide retaliation. Both cases relied on by Kodak, (*Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655 (N.D.Ga.2001) and *Elkins v. American Showa Inc.*, 219 F.R.D. 414 (S.D.Ohio 2002)), involved integrating a factual record developed during discovery into the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure. Moreover, Title VII pattern and practice retaliation claims have also been certified as class actions *and* successfully prosecuted. For example, in *Holsey v. Armour and Co.*, 743 F.2d 199, 216–17 (4th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985), the court affirmed a finding that an employer's pervasive harassment and retaliation against African–American employees who exercised rights protected by Title VII constituted a pattern and practice of retaliation. One of the issues on appeal was the appropriateness of class certification of the retaliations claims. The Fourth Circuit held:

We cannot accept Armour's contention that harassment and retaliation claims

are not susceptible of class treatment because they are too individualized. The plaintiffs established a general practice of retaliation against employees who opposed discriminatory practices or exercised rights protected under Title VII, in violation of § 704(a). Despite the presence of individual factual questions, the commonality criterion of rule 23(a) is satisfied by the common questions of law presented. In this case, the utility of the class action device would be destroyed by requiring the plaintiffs to bring separate claims of retaliation.

*Id.* at 216–17. *See also Wright v. Stern,* 2003 WL 21543539, *6 (S.D.N.Y. July 9, 2003) ("plaintiffs' hostile environment and retaliation allegations sufficiently target centralized personnel to support a finding of commonality."). Whether plaintiffs can demonstrate a pervasive policy of retaliation sufficient to meet the requirements for class certification remains to be seen. But the law permits them that opportunity.

■ *3. Associational Standing:* Kodak contends that ECJ lacks associational standing and must be dismissed as a party to the action. An association has standing to bring suit on behalf of its members in a representational capacity when: (a) its members would otherwise have standing to sue on their own; (b) the interests it seeks to protect are germane to the organizational purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). It is only the third prong of the associational standing test that Kodak claims ECJ cannot meet as a matter of law.

■ "In determining whether the last prong of [the *Hunt*] test is met, the result often turns upon whether the claim advanced by the association on behalf of its members is for damages." *Clark v. Mc-Donald's Corp.,* 213 F.R.D. 198, 207 (D.N.J.2003). Here, ECJ does not seek to recover monetary damages, but only seeks to obtain injunctive relief for the benefit of its membership. *See* Amended Complaint (Docket # 29) at ¶ 1. Thus, the relief requested by ECJ does not bar them from associational standing. *See Clark v. Mc-Donald's Corp.,* 213 F.R.D. at 207 ("It is almost a bright-line rule that requests by an association" for equitable relief do not require individual participation by association members).

Kodak, however, relies on the fact that some of the *claims* asserted in the amended complaint will require the participation of individual members of ECJ in arguing that ECJ cannot meet the third prong of *Hunt*.[3] Because "there can be little doubt that plaintiffs will proffer anecdotal evidence in an attempt to prove their allegations of a pattern or practice of race discrimination," and because members of ECJ will, according to Kodak, have to testify as to that anecdotal evidence, plaintiffs cannot establish that ECJ has associational standing to represent a class of African American employees. *See* Kodak's Reply Memorandum of Law (Docket # 65) at page 7–8.

At this stage of the proceedings, however, it is difficult to predict the extent to which plaintiffs will rely on ECJ members to prove their claims. Even if anecdotal evidence is offered by some plaintiffs in addition to statistical evidence, the witnesses who testify may not be members of ECJ. More importantly, however, the lia-

---

**3.** *See Rent Stabilization Ass'n v. Dinkins,* 5 F.3d 591, 596 (2d Cir.1993) (In determining associational standing, "the relief sought is only half the story.").

bility phase of the hostile work environment or retaliation claim will not hinge on subjective and "individualized proof," but rather the existence of a pervasive system-wide pattern or practice or discrimination that is equally harmful and applicable to all members of the protected class. Indeed, the third prong of *Hunt* has not been interpreted nearly as narrowly as Kodak proposes here. The third prong of *Hunt* does not require dismissal for lack of standing simply because several members of an association seeking injunctive relief testify or participate in a lawsuit. For example, in *Hospital Council of Western Pennsylvania v. City of Pittsburgh,* 949 F.2d 83, 89 (3rd Cir.1991), the court noted that the third prong of *Hunt* was derived from the Supreme Court's earlier, more detailed statement in *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) where the Court stated:

> [S]o long as the nature of the claim and of the relief sought does not make the individual participation of *each injured party* indispensable to proper resolution of the cause, the association may be an appropriate representative of its members entitled to invoke the court's jurisdiction.

*Warth v. Seldin,* 422 U.S. at 511, 95 S.Ct. 2197 (emphasis added). Based on the clear direction of *Warth,* the Third Circuit concluded that the final prong of *Hunt* does not mandate a blanket prohibition of all association members in the participation of a lawsuit. The court held that "an association may assert a claim that requires participation by *some* members." *Hospital Council of Western Pennsylvania v. City of Pittsburgh,* 949 F.2d at 89. *See Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 601–02 (7th Cir.1993) ("[w]e can discern no indication in *Warth, Hunt,* or *Brock* that the Supreme Court intended to limit representational standing to cases in which it would not be necessary to take any evidence from individual members of an association"); *N.Y. State National Organization for Women v. Terry,* 886 F.2d 1339, 1349 (2d Cir.1989) (association afforded standing although evidence from some individual members necessary), *cert.denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *Small v. General Nutrition Companies, Inc.,* 2005 WL 887020, *13 (E.D.N.Y. February 25, 2005) (court finds "persuasive [ ] the Third Circuit's analysis of the third *Hunt* prong"); *National Ass'n of College Bookstores, Inc. v. Cambridge Univ. Press,* 990 F.Supp. 245, 250 (S.D.N.Y.1997) (the fact that particularized evidence may be required of some representatives does not render associational standing inappropriate); *American Booksellers Association Inc. v. Random House, Inc.,* 1996 WL 499520, *5–6 (S.D.N.Y. September 4, 1996) (associational standing proper where the nature of the claim asserted does not require the participation of each individual member of the association); *Appraisers Coalition v. Appraisal Institute,* 845 F.Supp. 592, 601 (N.D.Ill.1994) (dismissal is only required only when the lawsuit would require participation of each member of the association).

Finally, it must be remembered that "the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others. The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or corporation in a single case to vindicate the interests of all.'" *International Union. United Auto. v. Brock,* 477 U.S. 274, 290, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986) (*quoting Joint Anti-Fascist Refugee Committee v. McGrath,*

341 U.S. 123, 187, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Jackson, J., concurring)). As noted by Judge Curtin of this district when faced with a similar standing argument, the Supreme Court has held that the third prong of *Hunt* is a prudential concern which focuses "on matters of administrative convenience and efficiency." *M.O.C.H.A. Society v. City of Buffalo,* 199 F.Supp.2d 40, 48–50 (W.D.N.Y.2002) (*quoting United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 557, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996)). At this early point in the litigation, the Court is not convinced, as a prudential matter, that determining ECJ's claims and their right to injunctive relief will involve the fact intensive and individual participation of each member of ECJ that the third prong of *Hunt* was intended to avoid. Accordingly, the Court determines that ECJ has associational standing.[4]

4. *"TAP" Agreement Releases:* Kodak seeks dismissal of the claims asserted by plaintiffs Gladys Alston, Carrie Rice and Olin Singletary based on signed releases these three individuals provided to Kodak as part of its Termination Allowance Plan (TAP). By signing the TAP agreements, these three plaintiffs affirmatively released Kodak from all claims of discrimination arising out of their employment with or termination from Kodak, including claims under Title VII. In return, Alston, Rice and Singletary received certain severance benefits from Kodak under the TAP agreement.

Because Kodak's motion referenced matters outside the pleading (i.e., the substance of the TAP agreements), Kodak requested that this portion of its motion to dismiss be treated as a Rule 56 motion for summary judgment in accordance with Rule 12(b) of the Federal Rules of Civil Procedure. *See* Kodak Memorandum of Law (Docket # 33) at page 16. In response, plaintiffs' counsel submitted a declaration which averred, *inter alia,* that should the court treat the TAP issue as one for partial summary judgment, it should nonetheless be denied because there exist "vital questions of fact surrounding" the release issue for which plaintiffs need discovery in order to respond to the arguments of Kodak. *See* February 25, 2005 Declaration of William T. Coleman, III (Docket # 59, Exhibit 5). In his declaration Mr. Coleman identified, in particular, the need to thoroughly investigate "whether consideration given in exchange for the release exceeds employee benefits to which the Plaintiffs were already entitled." *Id.* at ¶ 6.

It is beyond question that an employee may validly waive a Title VII discrimination claim so long as the waiver is made knowingly and voluntarily. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Bormann v. AT & T Communications, Inc.,* 875 F.2d 399, 402 (2d Cir.1989), *cert. denied,* 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989). In this circuit, courts must look to the "totality of circumstances" to determine whether the release of Title VII claims is knowing and volun-

4. Kodak also argued that ECJ lacks associational standing because the amended complaint fails to allege that any of the named plaintiffs are members of ECJ. However, Kodak conceded at oral argument that this defect could be cured by simply allowing plaintiffs to amend or supplement the complaint. Plaintiffs shall be permitted to supplement the allegations of the complaint by confirming that one or more of the named plaintiffs is a member of ECJ. Kodak's demand that ECJ be denied associational standing because it will, as a matter of law, be unable to demonstrate that it is either necessary or beneficial to the prosecution of this case is denied.

tary. *Bormann,* 875 F.2d at 403. The relevant factors include: (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the release before signing it; (3) the plaintiff's role in deciding the terms of the release; (4) the clarity of the release; (5) whether the plaintiff was represented by or consulted an attorney; (6) whether the consideration given in exchange for the employee's waiver exceeds benefits to which the employee was already entitled by contract or law; (7) whether the employer encouraged the employee to consult an attorney; and (8) whether the employee had a fair opportunity to do so. *Id.* These factors are not exhaustive, and all need not be satisfied before a release is deemed enforceable. *Id.* at 403.

■ The releases prepared by Kodak and signed by Alston, Rice and Singletary appear, on their face, to appreciate and require consideration of the various *Bormann* factors. Indeed, given the *Bormann* driven language used in the releases at issue here, this Court expressed skepticism during oral argument of the instant motion as to whether there really could be any material issue of fact as to the validity of the releases. However, in a post-*Bormann* case, the Second Circuit cautioned district courts that "unlike a statute of limitations defense (citation omitted), the validity of a release *is a peculiarly fact-sensitive inquiry.*" *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437–438 (2d Cir.1998) (emphasis added) (reversing dismissal of complaint on the basis that plaintiff had signed a release of Title VII claims). Cases in which releases have been found to be valid resulting in the dismissal of a case generally contain a fuller factual record concerning the *Bormann* factors, rather than simply a copy of the signed release document. *Compare*

*Cordoba v. Beau Dietl & Associates,* 2003 WL 22902266, *5–6 (S.D.N.Y. December 8, 2003) (court examined totality of circumstances, including whether there was "additional consideration," and found release to be valid); *and Finz v. Schlesinger,* 957 F.2d 78, 82–83 (2d Cir.) (substantial factual record revealed *Bormann* requirements were met and release was valid), *cert. denied,* 506 U.S. 822, 113 S.Ct. 72, 121 L.Ed.2d 38 (1992); *with DePalma v. Realty IQ Corp.,* 2002 WL 461647 (S.D.N.Y. March 25, 2002) (employer's motion for judgment on the pleadings denied where it was unclear whether the consideration given to plaintiff exceeded remuneration to which the employee was already entitled).

Here, plaintiffs have argued that Kodak will be unable to meet its burden of establishing that the releases were knowing and voluntary because the consideration given was inadequate or token. While the TAP agreements themselves set forth certain "severance benefits" being exchanged in consideration for, among other things, the employees releasing Kodak from liability in any employment discrimination lawsuit, the Court cannot fully evaluate the "totality of circumstances" regarding the adequacy of the consideration without knowing whether the severance benefits truly were greater than the employees would have been entitled to absent their execution of the TAP agreement. That information cannot be gleaned from the current record.

Thus, although I agree that the fully executed TAP agreements constitute persuasive evidence of a knowing and voluntary release, the TAP agreements, *in and of themselves,* are not sufficient evidence for the Court to dismiss the claims of Alston, Rice and Singletary on the present record. *See Vital v. Interfaith Medical Center,* 168 F.3d 615, 622 (2d Cir.1999) (employer could not prevail in Title VII action simply by showing that employee

signed settlement agreement releasing Title VII claims; rather employer must further establish that agreements were entered into knowingly and voluntarily). That being said, once the release defense has been affirmatively pled by Kodak, this seems to be an issue that could be decided early in the litigation and without the need for extensive discovery.

▮ *5. Dismissal of Title VII Claims Outside Rochester:* It is well settled that in Title VII cases, the district courts have jurisdiction over claims "reasonably related to the allegations in the complaint filed with the EEOC." *Kirkland v. Buffalo Board of Education,* 622 F.2d 1066, 1068 (2d Cir.1980) (per curiam). "In determining whether a particular claim is reasonably related to the plaintiff's EEOC complaint, we look not merely to the four corners of the often inarticulately framed charge, but take into account the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gomes v. Avco Corp.,* 964 F.2d 1330, 1334 (2d Cir.1992) (internal quotation and citation omitted).

▮ Kodak represents that it is "not clear" from the amended complaint whether plaintiffs are seeking to represent a nationwide class of employees or just Kodak employees in Rochester, New York. However, Kodak argues "[t]o the extent that they seek to assert Title VII claims on behalf of employees employed outside of Rochester, New York, such claims must be dismissed." *See* Kodak's Memorandum of Law (Docket # 33) at page 18. Kodak argues that neither the charges filed with the EEOC nor any EEOC investigation which could have reasonably been expected to grow from the charges would suggest that plaintiffs were alleging discrimination outside of Rochester, New York. Thus, Kodak insists that it "could not and did not, have reasonable notice of nation-wide claims of race discrimination arising from plaintiffs' EEOC charges." *See* Kodak Reply Memorandum of Law (Docket # 65) at pp. 15–16.

Resolution of Kodak's argument on this issue is uniquely ill-suited to a motion to dismiss. Indeed, the case upon which Kodak principally relies and describes as "squarely on point with the instant facts" pays tribute to the nature of evidence outside the pleadings that the Court should properly take into account in fairly determining this issue. In *EEOC v. Jillian's of Indianapolis,* 279 F.Supp.2d 974, 980–82 (S.D.Ind.2003), the district court held that the EEOC's nationwide pattern or practice complaint against the defendant was not the product of an investigation that reasonably grew out of charges by four men who claimed that Jillian's of Indianapolis refused to place them in the more lucrative position of waiting on tables and instead assigned them to work as door hosts. In determining that the eventual lawsuit did not arise from the scope of the investigation, the court relied on a factual record *far different* than what is currently before this Court. The court referred to substantive documents that were part of the complete administrative record, including what documents and information the EEOC sought from the employer, correspondence between the EEOC and the employer, the results of EEOC investigatory interviews of employees and management, proposed conciliation agreements, internal correspondence among Jillian's employees created during the EEOC investigation, and deposition testimony of Jillian's Human Resources Department. *Id.* at 981–982.

Here, the charges filed with the EEOC by named plaintiffs reference *inter alia* race discrimination against "all other similarly situated black employees," "black employees employed at Eastman Kodak," "similarly situated black employees," "oth-

438

er black employees," and the treatment of "black employees within the company." *See* Exhibits annexed to the Affidavit of Eugene D. Ulterino, Esq. (Docket # 33). Plaintiff Gladys Alston's charge of discrimination (Exhibit "D" to Ulterino Affidavit) references the fact that Kodak has "approximately 30,000 employees" and claims that "[t]here has been a history of discrimination against the black employees of Eastman Kodak throughout our years of employment." *See* Alston Affidavit ¶¶ 5–6. The EEOC Determinations refer to Kodak's implementation of the "Do the Right Thing Award" program, a Kodak initiative apparently intended to address claims of racial disparities in wages and promotions. During oral argument of the instant motion, Kodak's counsel stated that the Do The Right Thing program included employees who worked outside of Rochester and that the EEOC "looked at data" from the program as part of their investigation.

The foregoing, of course, is not determinative of the exhaustion issue raised by Kodak, but certainly suggests that both Kodak and plaintiffs should be allowed the opportunity to flesh out more facts. Kodak has not cited any precedent, and this Court has found none, which would require plaintiffs to unquestioningly accept Kodak's assertion that "it could not, and did not, have reasonable notice of nationwide claims of race discrimination arising from plaintiffs' EEOC charges." *See* Kodak Reply Memorandum of Law (Docket # 65) at pp. 15–16. Put simply, the Court should have the benefit of a more complete record, particularly documents and materials related to the nature and scope of the EEOC investigation, before making a determination that plaintiffs are precluded from bringing class claims concerning alleged race discrimination occurring outside of Rochester, New York.

*6. Statute of Limitations Issues:* Kodak raises several statute of limitations issues. Allegations that a claim is barred by an applicable statute of limitations is an affirmative defense normally asserted in an answer. *See* Fed.R.Civ.P. 12(b). However, "[where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss]" for failure to state a claim. *Ghartey v. St. John's Queens Hospital,* 869 F.2d 160, 162 (2d Cir.1989). When choosing to raise the defense in a pre-answer motion, however, the defendant faces a "higher burden." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir.2004). A defendant presenting an affirmative defense "on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright,* 386 F.3d at 436 (internal quotation and citation omitted). Factual allegations in briefs or memoranda may not be considered. *Ghartey v. St. John's Queens Hospital,* 869 F.2d at 162. With these established legal principles in mind, the Court turns to the limitation arguments raised by Kodak.

*A. Relation Back of Class Allegations:* On November 19, 2002, *pro se* plaintiff Courtney Davis filed a charge of discrimination with the EEOC. The charge alleged in part that Davis "and other black employees" at Kodak had been discriminated against in the terms and conditions of their employment as compared to "our white counterparts." Davis further alleged that she "and other similarly situated black em-

ployees have been discriminated against based on our race, black, and in retaliation for protesting discriminatory practices." *See* Exhibit "A" annexed to Ulterino Affidavit.[5] After receiving her right-to-sue letter on August 18, 2003, Davis completed, and on November 11, 2003 filed, a form "Employment Discrimination Complaint" provided to *pro se* litigants. The form complaint specifically referenced the fact that Davis filed charges with the EEOC "regarding defendant's alleged discriminatory conduct" and attached both her Right To Sue Notice and a copy of the EEOC determination letter. *See* Exhibit "K" annexed to Ulterino Affidavit. Kodak answered Davis' complaint on March 16, 2004. Thereafter, on June 3, 2004 Davis (now represented by counsel) and Kodak entered into and filed with the Court a stipulation which granted Davis the right to file an amended complaint that included class allegations. (Docket # 27). On July 30, 2004, plaintiffs filed an amended complaint (Docket # 29) asserting class allegations and naming additional plaintiffs.

In its motion to dismiss, Kodak argues that for statute of limitation purposes, the class allegations "cannot relate back to the initial complaint." *See* Kodak Memorandum of Law (Docket # 33) at page 21. According to Kodak, because the allegations in the form *pro se* complaint completed by Davis "focused solely on herself" and made "no mention whatsoever of other Kodak employees" Kodak "could not have known at the time the original [*pro se*] complaint was filed that class allegations would be asserted." *Id.* at 21.

■ Kodak relies on Rule 15(c) in support of its position. Although the Rule

"is framed in terms of an amendment that would change the party 'against' whom the claim is asserted and of the new party's ability to maintain a 'defense,' it is also applicable to a proposed change of plaintiffs." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19 (2d Cir.1997). "The goal of relation-back principles is 'to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense.'" *Id.* (*quoting* Fed.R.Civ.P. 15 Advisory Committee Note (1991)). The relevant inquiry in applying the relation back analysis is two-fold: (1) did the defendant have fair notice of the substance of the amendments and (2) will the defendants suffer prejudice by allowing the amendments. "As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense." 6A Charles A. Wright, et al., Federal Practice and Procedure § 1501 (1990).

■ In pressing this issue, Kodak does not argue that the approximately eight month difference in the limitations period at issue here would prejudice them in their litigation strategy, would vastly change the scope of discovery or would exponentially increase their exposure to damages. Rather, Kodak's argument rests upon their position that because the original *pro se* complaint did not "sufficiently allege[ ] class allegations" it could not, as a matter of law, "put Kodak on notice of the pen-

**5.** Although the EEOC charges are not attached to the complaint, they are specifically referenced therein and may properly be considered on a Rule 12 motion to dismiss. *See Byrne v. Telesector Resources Group, Inc.*, 2005 WL 464941, *4 (W.D.N.Y. February 25, 2005) (court may properly consider as part of the pleadings the EEOC charge expressly referenced in the complaint in ruling on a Rule 12(b) motion to dismiss).

440

dency of such claims." *See* Kodak's Reply Memorandum (Docket # 65) at page 17.

Significantly, Kodak does not argue that Davis' *EEOC charge* failed to provide fair notice that Davis' allegations of race discrimination were being directed not only in relation to her own experience, but also with respect to "other similarly situated black employees." However, according to Kodak, "whatever Davis alleged in her EEOC charge has nothing whatsoever to do with the relevant test for relation back under Rule 15. The only issue before the Court is whether Davis' original complaint, not her EEOC charge, sufficiently alleged class allegations to put Kodak on notice." *Id.*

I respectfully disagree with Kodak's premise that as a matter of law the requisite notice required under Rule 15 *must* be found in the content of the original pleading. *See* 6A Wright, et al., Federal Practice and Procedure § 1497 (noting with approval the position "that it is sufficient if the opposing party was made aware of the matters to be raised by the amendment from sources other than the pleadings, a position that seems sound since it is unwise to place undue emphasis on the particular way in which notice is received"). Where, as here, there were (1) administrative proceedings with the EEOC that essentially defined what claims could be litigated once the right-to-sue notice was issued; (2) the EEOC charge expressly included allegations upon which an employer could reasonably have had notice that plaintiff intended to pursue relief for herself "and other similarly

situated black employees"; and (3) the plaintiff, acting without the assistance of counsel, completed a form employment discrimination complaint that although omitted any express reference to "others similarly situated," did reference the EEOC charge and attached the resulting right-to-sue notice issued by the EEOC based on that charge, I am not convinced that there exists no set of facts to support the application of the relation back doctrine. *See Ackerman v. City of Harvey Police Department*, 1998 WL 67632, *3 (N.D.Ill. January 29, 1998) ("Reading plaintiff's original *pro se* complaint liberally, this court finds that defendants were on notice of these allegations made in the EEOC charge even though they were not included in plaintiff's original *pro se* complaint form").[6]

**B.** *Other Statute of Limitation Claims:* Kodak asks this Court to define as a matter of law the statute of limitation period applicable to plaintiffs' claims under 42 U.S.C. § 1981, New York Human Rights Law, and Title VII. Plaintiffs respond that it would be unfair and premature to define the statute of limitations and dismiss any class claims as outside the defined limitations period because: (1) plaintiffs have not yet decided the class of plaintiffs they will seek to certify and (2) the continuing violation theory may serve to allow plaintiffs to assert claims of race discrimination beyond the otherwise applicable limitations periods because the complaint alleges a pattern or practice of discrimination.

**6.** Kodak's reliance on *Cliff v. Payco General American Credits, Inc.*, 363 F.3d 1113, 1131–33 (11th Cir.2004) is understandable, but I believe distinguishable. While the plaintiff in *Cliff* was *pro se*, he was a practicing attorney who was not fending for himself using court issued "fill-in-the-blank" complaint forms. Moreover, unlike the instant case where there was an administrative charge which expressly mentioned discrimination against "others similarly situated," *Cliff* involved alleged violations of the Fair Debt Collection Practices Act where there was no administrative charge or pre-suit document that could have put the defendant on notice of potential class allegations.

I agree with plaintiffs that it would be premature and imprudent to dismiss potential claims on statute of limitation grounds at this early stage of the litigation. Both Kodak and plaintiffs agree that the Supreme Court has specifically left open the issue as to whether the continuing violation theory applies to "pattern or practice" cases brought by private litigants. *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115, n. 9, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Kodak argues that despite this uncertainty, the Court should rule that plaintiffs can prove no set of facts to support their claim of a pattern or practice of discriminatory pay, failure to promote, or retaliation that would be anything other than discrete discriminatory acts for which the continuing violation theory does not apply as a matter of law.

Kodak has cited the Court to several post-*Morgan* cases in which the continuing violations theory did not operate to extend the statute of limitations, even if the discrete discriminatory acts may have been part of a broader discriminatory policy. *See* Kodak Reply Memorandum (Docket # 65) at pages 21–22. All but one [7] of the cases cited by Kodak were decided on summary judgment motions in which the court had the benefit of factual information on the interrelationship between the discrete acts of discrimination and the broader policy at issue.[8] The amended complaint here charges more than discrete acts of "run of the mill" failure to promote or disparate pay claims. The amended complaint alleges long standing and overarching company policies authorizing Kodak managers to make racially discriminatory pay and promotion decisions or assigning lesser wage grades to African American employees. The amended complaint alleges Kodak implemented a systemic practice of grooming white employees for advancement while denying the same opportunities for African American employees. Deciding whether these charges, if true, merely allege discrete acts of disparate pay and failure to promote or implicate a company-wide practice, policy and custom of intentional race-based discrimination is a task that should not be decided in a factual vacuum. Determining the applicability of the continuing violation theory at this stage of the litigation is unwise given the nature of the factual allegations set forth in the amended complaint. *See Branch v. Guilderland Cent. School Dist.,* 239 F.Supp.2d 242, 254 (N.D.N.Y.2003) ("[I]f plaintiff was seeking recovery for each independent and separate instance of alleged retaliation, as is urged by defendants, then *Morgan* would control and plaintiff, to the extent that he seeks relief based on conduct prior to February 19, 2002, would have no recourse." This, however, is not the case. Plaintiff instead repeatedly expresses or implicates, in the Amended Complaint and elsewhere, that the actions of defendants upon which his suit is based constitute a 'policy' or 'custom' and thus, the continuing violations theory may be applicable); *Svenningsen v. College of Staten Island,* 2003 WL 21143076, *1 (E.D.N.Y. March 28, 2003)("Here, the Court finds that Plaintiff has alleged specific and related instances

---

7. *Blake v. Bronx Lebanon Hospital,* 2003 WL 21910867 (S.D.N.Y. August 11, 2003). In granting the defendant's partial motion to dismiss, Judge Motley was careful to point out that "plaintiff brings this case on behalf of himself alone-this is not a 'pattern and practice' class action suit." *Id.* at *1.

8. Kodak's reliance on *Johnson v. Buffalo Police Dept.,* 46 Fed.Appx. 11 (2d Cir.2002) is inappropriate. That decision is an unpublished summary order and under Second Circuit rules may not be cited as precedential authority in any unrelated case. *Id.*

442

of discrimination that the employer has permitted to continue unremedied, and these allegations support a continuing violation under the pre-*Morgan* standard". (Citation omitted). Furthermore, Plaintiff alleges a 'pattern and practice of retaliation,' and so her claims are not clearly time-barred under *Morgan,* which broadly excluded "pattern and practice" cases from the ambit of its ruling.).

By raising this issue on a Rule 12(b) motion to dismiss, Kodak has chosen to accept "the more stringent standard applicable to this procedural route." *McKenna v. Wright,* 386 F.3d at 436. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Giving plaintiffs all reasonable inferences from the facts alleged, not only those that support their claims, but also those that defeat the statute of limitations defense, requires this Court to deny the motion to dismiss certain claims allegedly outside the applicable limitations period and defer any determination as to the applicability of the continuing violations theory until a more complete factual record is before the Court.

7. *Extraterritorial Application of New York Human Rights Law:* Kodak asks this Court to dismiss any claims plaintiffs might conceivably make under New York's Human Rights Law for acts of discrimination which arose in states other than New York. *See* Kodak's Memorandum of Law (Docket # 33) at page 24–25. Kodak's arguments in this regard are premature. During oral argument of the motion it was apparent that the dismissal motion would not apply to any named plaintiff in the

amended complaint and, as plaintiffs' counsel concedes, if a class is eventually certified, its scope is far from certain. While the Court is cognizant of Kodak's desire to limit discovery, that concern is moot in light of the Court's ruling as to dismissal of Title VII claims occurring outside of Rochester.

### *Conclusion*

The defendant's motion to dismiss portions of plaintiffs' complaint is **denied.** No later than **October 10, 2005,** plaintiffs shall file and serve a supplemental pleading which confirms that one or more of the named plaintiffs are members of ECJ. Pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, it is not required that Kodak respond to the supplemental pleading. Defendant shall answer the amended complaint. Within thirty (30) days after issue is joined, lead counsel shall meet and confer and submit a joint proposed discovery plan to the Court. Upon receipt of the joint discovery plan, the Court will schedule a Rule 16 scheduling management conference with lead counsel and thereafter issue a Scheduling Order.

**SO ORDERED.**