386 F.3d 432
 Edward McKENNA, Plaintiff-Appellee,
v.
Lester N. WRIGHT, Associate Commissioner/Chief Medical Officer Docs; John P. Keane, Woodbourne Correctional Facility; T.J. Miller, Deputy Supt. for Admin., Woodbourne Correctional Facility; Frank Lancellotti, Mervat Makram, Health Care Unit, Woodbourne Correctional Facility; All Unnamed Persons, Officers, Civilians, Individually and in Their Official Capacities, Defendants-Appellants.
 Docket No. 04-0492-PR.
 United States Court of Appeals, Second Circuit.
 Argued: August 23, 2004.
 Decided: October 18, 2004.
 
 Appeal from the United States District Court for the Southern District of New York, Harold Baer Jr., J.
 Melanie L. Oxhorn, Asst. Solicitor Gen., Office of N.Y. State Atty. Gen., New York, N.Y. (Eliot Spitzer, N.Y. State Atty. Gen., Michael S. Belohlavek, Dep. Solicitor Gen., New York, N.Y., on the brief), for Defendants-Appellants.
 Kristina Jones, New York, N.Y. (Sung-Hee Suh, Stacy P. Aronowitz, Schulte Roth & Zabel LLP, New York, N.Y., on the brief), for Plaintiff-Appellee.
 Before: NEWMAN, MINER, and KATZMANN, Circuit Judges.
 JON O. NEWMAN, Senior Circuit Judge.
 
 
 1
 This interlocutory appeal concerns (a) the procedural issue of whether a qualified immunity defense may be presented in a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure and (b) the substantive issue of whether a qualified immunity defense is valid on such a motion in the context of a prisoner's claim for inadequate medical treatment for Hepatitis C Virus ("HCV"). These issues arise on an appeal by personnel of the New York Department of Correctional Services ("NYDOCS") from an order of the District Court for the Southern District of New York (Harold Baer, Jr., District Judge), denying their motion to dismiss a complaint by Plaintiff-Appellee Edward McKenna. We conclude that a qualified immunity defense can be presented in a Rule 12(b)(6) motion, but that the defense faces a formidable hurdle when advanced on such a motion and was properly rejected at this preliminary stage of McKenna's case. We therefore affirm.
 
 Background
 
 2
 Because the Defendants-Appellants have elected to present their qualified immunity defense in a motion to dismiss for failure to state a claim on which relief may be granted, we assess the appeal on the basis of the facts alleged in the Plaintiff-Appellee's complaint, which we assume to be true for purposes of this appeal. Cf. Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 250 (2d Cir.2001) (reviewing grant of a motion to dismiss on the basis of facts in complaint assumed to be true). McKenna has been in the custody of NYDOCS since 1990. He has HCV, a treatable chronic blood-borne virus that seriously affects the functioning of the liver. He has informed prison officials that he is a Vietnam veteran, has used drugs intravenously, has been diagnosed with a sexually transmitted disease, and has previously been incarcerated. All these circumstances are indications of potential HCV disease. In 1994, tests indicated some symptoms of HCV.
 
 
 3
 In 1998, McKenna was transferred to Woodbourne Correctional Facility, but not tested for HCV, although it was NYDOCS policy to test all those entering a new facility for HCV. In 1999, McKenna was tested, and Dr. Mervat Makram, a physician at Woodbourne and one of the defendants, told McKenna that he had HCV. In 1999, McKenna saw Dr. Frank Lancellotti, another physician at Woodbourne and also one of the defendants, who treated him for abdominal pain. In September 1999, Dr. Lancelotti refused McKenna treatment for HCV because of a NYDOCS guideline that prohibited treatment for those who would not remain incarcerated for at least twelve months after treatment began. Although McKenna had four more years to serve, he had a Parole Board appearance scheduled in just under one year, which might have resulted in his release from custody.
 
 
 4
 In 2000, after being denied parole, McKenna again requested treatment, but Dr. Lancellotti declined because McKenna was not enrolled in an Alcohol and Substance Abuse Treatment ("ASAT") program. NYDOCS had previously deemed McKenna ineligible for ASAT because of his medical condition. McKenna then underwent various tests and procedures at the Albany Medical Center, but was denied follow-up visits ordered by doctors at the Center.
 
 
 5
 In 2001, Dr. Makram told McKenna that his infection had progressed to cirrhosis of the liver and denied him treatment because his cirrhosis was decompensated, i.e., accompanied by various complications such as jaundice, ascites, and hemorrhaging. When McKenna requested a liver transplant, however, Dr. Lester Wright, the Chief Medical Officer of NYDOCS and a defendant, turned down the request because the cirrhosis was probably compensated. McKenna contends that a compensated cirrhosis should be treated with medication, while a decompensated cirrhosis warrants a transplant.
 
 
 6
 In October 2002, Dr. John E. Cunningham, acting regional medical director of NYDOCS and a defendant, denied McKenna treatment because he was not enrolled in ASAT. In December 2002, McKenna enrolled in the ASAT program, but still did not receive treatment. McKenna was finally approved for treatment in January 2003. However, because of the delay in receiving treatment, his disease was so advanced that the side effects rendered him too weak to continue treatment.
 
 
 7
 After exhausting his administrative remedies, McKenna filed suit against the medical personnel identified above and four non-medical supervisory personnel, T.J. Miller, the Deputy Superintendent at Woodbourne, John P. Keane and Raymond J. Cunningham, Superintendents at Woodbourne at various times during McKenna's incarceration, and NYDOCS Commissioner Glen Goord. The complaint alleged violations of the Eighth and Fourteenth Amendments.
 
 
 8
 The defendants moved to dismiss for failure to state a claim. Their Rule 12(b)(6) motion asserted lack of personal involvement as to some defendants, qualified immunity as to all defendants, and insufficiency of the constitutional claims. The District Court dismissed the Fourteenth Amendment substantive due process claim, dismissed the complaint as to Goord for lack of personal involvement, upheld the sufficiency of the Eighth Amendment claim, and rejected the qualified immunity defense as to all other defendants at this preliminary stage of the litigation.
 
 Discussion
 
 9
 I. Availability of Qualified Immunity Defense
 
 
 10
 We consider first the availability of the defense of qualified immunity on a Rule 12(b)(6) motion. Qualified immunity is an affirmative defense, see Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and an affirmative defense is normally asserted in an answer, see Fed.R.Civ.P. 12(b). Although we have noted that "[u]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted," Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir.1983) (emphasis added), we have permitted the defense to be successfully asserted in a Rule 12(b)(6) motion on at least two occasions. In Green, a court reporter was alleged to have altered the transcript of a criminal trial. We upheld the reporter's qualified immunity defense, ruling that because the reporter had acted at the trial judge's instruction, the reporter was entitled to qualified immunity. See id. at 1018-19. We permitted the defense to be asserted on a Rule 12(b)(6) motion because "the complaint itself establishe[d] the circumstances required as a predicate to a finding of qualified immunity." Id. at 1019. The procedural ruling was partly influenced by the basis for the immunity ruling: "dismissal pursuant to [Rule] 12(b)(6) was proper ... `[s]ince judges are immune from suit for their decisions, [and therefore] it would be manifestly unfair to hold liable the ministerial officers who carry out the judicial will.'" Id. (substantially quoting McCray v. Maryland, 456 F.2d 1, 5 n. 11 (4th Cir.1972)) (alterations in original).
 
 
 11
 In Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2d Cir.1998), a fiscal intermediary was alleged to have made false statements to the Department of Health and Human Services concerning a doctor's claim for Medicare reimbursement. We upheld the intermediary's defense of official immunity, reasoning that "fiscal intermediaries ... are acting as adjuncts to the government and are carrying out a traditional government function." Id. at 74. We permitted the defense to be asserted on a Rule 12(b)(6) motion because the facts supporting the defense appeared on the face of the complaint. See id. at 74-75.
 
 
 12
 In the pending case, the qualified immunity defense being asserted is the traditional one asserted by executive branch personnel making discretionary decisions, see, e.g., Procunier v. Navarette, 434 U.S. 555, 561-62, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (prison officials), rather than the specialized defense of a court reporter shielded, in effect, by the immunity of the judge whose direction she followed, as in Green, or that of a fiscal intermediary shielded by official immunity for performing a governmental function, as in Pani. Nevertheless, we see no reason why even a traditional qualified immunity defense may not be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint. In Pani, we broadly stated the rule to be that "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." See Pani, 152 F.3d at 74. We cited cases permitting a Rule 12(b)(6) motion to raise the affirmative defense of res judicata, see Day v. Moscow, 955 F.2d 807, 811 (2d Cir.1992), and a statute of limitations defense, see Ghartey v. St. John's Queens Hospital, 869 F.2d 160, 162 (2d Cir.1989). See Pani, 152 F.3d at 74; see also Anderson v. Recore, 317 F.3d 194, 197-202 (2d Cir.2003) (entertaining but rejecting qualified immunity defense asserted on Rule 12(b)(6) motion without discussion of procedural issue). The Supreme Court has noted that "an order rejecting the defense of qualified immunity at either the dismissal stage or the summary judgment stage is a `final' judgment subject to immediate appeal," Behrens v. Pelletier, 516 U.S. 299, 307, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (emphases in original), at least obliquely suggesting that the defense may be presented on a Rule 12(b)(6) motion. But see Jacobs v. City of Chicago, 215 F.3d 758, 775 (7th Cir.2000) (Easterbrook, J., concurring in part) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal.").
 
 
 13
 Of course, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, see Pani, 152 F.3d at 74, but, as with all Rule 12(b)(6) motions, the motion may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1494 (2d Cir.1992). Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense. On the other hand, with a motion for summary judgment adequately supported by affidavits, the party opposing the motion cannot rely on allegations in the complaint, but must counter the movant's affidavits with specific facts showing the existence of genuine issues warranting a trial. See Fed.R.Civ.P. 56(c). A party endeavoring to defeat a lawsuit by a motion to dismiss for failure to state a claim faces a "higher burden" than a party proceeding on a motion for summary judgment. See Moore's Federal Practice § 56.30[3][b]; see also id. § 56.30[3][d]. We therefore turn to the merits of the immunity defense.
 
 II. Merits of Qualified Immunity Defense
 
 14
 The parties are in agreement that a prisoner claiming a denial of adequate medical care in violation of the Eighth Amendment must allege and ultimately prove that prison officials acted with deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Therefore, to establish their qualified immunity defense, the defendants must show that it was "objectively reasonable," Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir.2003), for them to believe that they had not acted with the requisite deliberate indifference. They contend that McKenna's condition was "continuously assessed and monitored" by Woodbourne officials and that any denial of treatment resulted from McKenna's failure to meet applicable treatment guidelines. See Br. for Appellants 14.
 
 
 15
 However the matter may stand at the summary judgment stage, or perhaps at trial, we agree with Judge Baer that the defendants remaining in the case cannot have the complaint dismissed at the pleading stage on the basis of qualified immunity. McKenna's detailed 29-page amended complaint alleges a series of failures to test for his condition despite known danger signs of his disease, failure to initiate treatment when the need for treatment was apparent, failure to send McKenna for follow-up visits ordered by doctors at the Albany Medical Center, and denial of treatment on the basis of inapplicable or flawed policies. McKenna alleges that he was denied treatment pursuant to one policy for lack of enrollment in the ASAT program even though he was told that he was ineligible for the program because of his medical condition. He further alleges that he was denied treatment pursuant to another policy because it was not certain that he would remain incarcerated for twelve months.
 
 
 16
 The defendants contend that the twelve-month incarceration rule is sound because the consequences of interrupting treatment (by the prisoner's release) include a risk of "the development and spread of untreatable HCV." Br. for Appellants at 22. Whether or not that theory can be supported on summary judgment by affidavits of sufficient plausibility to demonstrate the defendants' objectively reasonable reliance on the policy, McKenna's allegation that he was denied urgently needed treatment for a serious disease because he might be released within twelve months of starting the treatment sufficiently alleges deliberate indifference to withstand a Rule 12(b)(6) motion.
 
 
 17
 We also agree with Judge Baer that the defendants remaining in the case are alleged to have had sufficient personal involvement to justify rejection of their immunity defense on a motion to dismiss. The four medical defendants, Drs. John Cunningham, Lancellotti, Makram, and Wright, are all alleged to have participated in the denial of treatment. Of the three non-medical defendants, Raymond Cunningham and Keane were superintendents of Woodbourne, not merely "link[ed] in the prison chain of command," Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir.1985), or faulted for failing "to dictate the specific medical treatment" of an inmate, Cuoco v. Moritsugu, 222 F.3d 99, 111 (2d Cir.2000), but adequately alleged to have had responsibility for enforcing or allowing the continuation of the challenged policies that resulted in the denial of McKenna's treatment, see Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995). Miller is alleged to have denied treatment for McKenna by rejecting McKenna's grievance. Complaint ¶ 120. Although it is questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of, see Joyner v. Greiner, 195 F.Supp.2d 500, 506 (S.D.N.Y.2002), Miller was properly retained in the lawsuit at this stage, not simply because he rejected the grievance, but because he is alleged, as Deputy Superintendent for Administration at Woodbourne, to have been responsible for the prison's medical program. When allegations of improperly denied medical treatment come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility. See Colon, 58 F.3d at 873.
 
 Conclusion
 
 18
 The order of the District Court denying the defendants' motion to dismiss is affirmed.