Amador YOUNG, Plaintiff–Appellant,

v.

Glenn GOORD, Commissioner of the New York State Department of Correctional Services, Anthony Annucci, Counsel and Deputy Commissioner for the New York State Department of Correctional Services, Captain Dirie, Superintendent at Arthur Kill Correctional Facility, Dennis Breslin, Superintendent at Arthur Kill Correctional Facility, Sgt. Ochal, Correction Sergeant at Arthur Kill Correctional Facility, Daniel Crum, Correction Officer at Arthur Kill Correctional Facility, Defendants–Appellees.

No. 05–1790–pr.

United States Court of Appeals, Second Circuit.

Aug. 2, 2006.

**32**

Mitchell A. Karlan, New York, NY, for Plaintiff–Appellant.

Shaifali Puri, Assistant Solicitor General, New York, NY, for Defendants–Appellees.

PRESENT: Honorable THOMAS J. MESKILL, Honorable ROSEMARY S. POOLER, Honorable PETER W. HALL, Circuit Judges.

Plaintiff-appellant Amador Young commenced this action *pro se* on February 1, 2001, in the United States District Court for the Eastern District of New York (Gleeson, *J.*), alleging violations of the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. On September 3, 2002, the district court granted defendants-appellees' motion to dismiss for failure to state a claim. *See Young v. Goord,* 2002 WL 31102670, 2002 U.S. Dist. Lexis 17715 (E.D.N.Y. Sept. 3, 2002). Young appealed, and on May 29, 2003, we vacated in part and affirmed in part the judgment of the district court. *See Young v. Goord,* 67 Fed.Appx. 638 (2d Cir.2003). With the assistance of appointed counsel, Young filed an amended complaint on April 9, 2004. On March 10, 2005, the district court granted appellees' motion to dismiss the amended complaint. *See Young v. Goord,* 2005 WL 562756, 2005 U.S. Dist. Lexis 3641 (E.D.N.Y. Mar. 10, 2005). We assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

We first address Young's argument that the district court erred in dismissing his due process claim on the ground that defendants were entitled to qualified immunity. The qualified immunity doctrine shields government officials performing discretionary functions from having to stand trial "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A right is "clearly established" when "[t]he contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The question is not what the officials *actually* believed, but whether "their actions *could reasonably have been thought* consistent with the rights they are alleged to have violated." *Id.* at 638, 107 S.Ct. 3034 (emphasis added).

A "more stringent standard" is applied when a defendant asserts qualified immunity as a ground for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) in that "as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004) (internal quotation marks omitted). The availability of the defense as a matter of law, then, turns on whether the plaintiff could possibly prove any set of facts that would undermine the objective reasonableness of defendants' actions. *Id.* In other words, the defense must be "based on facts appearing on the face of the complaint." *Id.*

Young claims his punishment violated two fundamental principles of due process. First, no person can be punished without "fair warning of what was proscribed," *Deegan v. City of Ithaca*, 444 F.3d 135, 145 (2d Cir.2006) (internal quotation marks omitted), and any warning that would require an inmate to "perform[ ] the lawyer-like task of statutory interpretation by reconciling the text of three separate documents" to discern whether his conduct is proscribed is "unfair," *Chatin v. Coombe*, 186 F.3d 82, 89 (2d Cir.1999). Second, no person can be punished "because he has done what the law plainly allows him to do." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

We agree with Young that these principles are clearly established. However, on the facts as Young pleaded them in his amended complaint, we conclude that defendants could reasonably have believed their conduct did not violate either of these two principles and, accordingly, that they are entitled to qualified immunity from suit as a matter of law. *See Anderson*, 483 U.S. at 638, 107 S.Ct. 3034.

These are the salient facts as Young pleaded them, construed in the light most favorable to him. On February 18, 1997, pursuant to the then-applicable version of the New York State Department of Correctional Services (DOCS) Directive 4914, Young applied for and received an exemption from DOCS' beard-length policy based on his documented affiliation with the Rastafarian Church. On August 28, 2000, correctional officer Daniel Crum gave Young a memorandum indicating that Directive 4914 had been revised to reflect a change in federal law and then ordered Young to trim his beard. When Young refused, Crum issued a misbehavior report. At a hearing on September 1, 2000, the misbehavior report was dismissed and no discipline was imposed because, prior to the encounter with Officer Crum, "[Young] did not know that each inmate who is Rastafarian, Orthodox Jew, or Muslim has to have a court restraining order [to be exempt from the policy]."[1] The hearing officer noted that Young's understanding was "from *previous* directive revisions," under which members of certain religions "were exempt based on documented membership in these religions." (emphasis added.) After this hearing, Young twice disobeyed direct orders to trim his beard and was issued two more misbehavior reports, pursuant to which he was disciplined.

On these facts, we conclude that DOCS officials could reasonably have thought their actions consistent with Young's right to due process of the law. First, it is at least reasonable to read Rule 110.32 *not* to create a substantive right to a religious exemption from the beard-length policy so that there is no inconsistency between it and Directive 4914.[2] Nothing in the Rule implies that once an inmate has requested and received an exemption, DOCS cannot revoke it (provided, of course, that no other law independently guarantees the substantive right to the exemption). Nor does the Rule itself describe the process whereby such exemptions are granted or revoked.

Thus, no "clearly established" law would foreclose DOCS officials' reasonable

---

1. Young's counsel at oral argument before the district court confirmed that the reason for the outcome of this first hearing was Young's lack of notice. Young has never suggested that he was told he was found not guilty because he was correct in maintaining that he was exempt from the beard-length policy.

2. We note that our decision encompasses only the reasonableness of defendants' so construing the Rule and Directive. We do not imply that it would have been reasonable to expect Young on his own to put the documents together in this way.

belief[3] that they effectively and validly revoked Young's exemption when they personally informed him of the change in policy such that his previously granted exemption was no longer valid—first through Officer Crum's giving Young a copy of the memo explaining the policy change, and second through the hearing on his first misbehavior report. Then it would follow that Rule 110.32 itself, not the Directive or a memo, proscribed Young's continued refusal to trim his beard. Disciplining Young for his failure to comply with the Rule, then, would reasonably be understood to constitute neither punishing him for what the law allowed him to do, see *Bordenkircher*, 434 U.S. at 363, 98 S.Ct. 663, nor punishing him for violating a Directive, see *Chatin*, 186 F.3d at 88 ("[T]he uncontested evidence at trial was that an inmate may not be punished for violating a Directive.").

Defendants would have been further justified in believing that the first hearing provided Young more than "fair warning of what was proscribed" before he was disciplined, *Deegan*, 444 F.3d at 145, because its disposition informed Young personally that DOCS considered his beard length no longer permissible. These officials could reasonably believe that their actions comported with our decision in *Chatin* because they personally notified Young, before he was disciplined, of the change effected by the revised Directive and an implementing Memorandum; they did not expect Young himself to "reconcil[e] the text" of these different documents. *Chatin*, 186 F.3d at 89.

If Young was entitled to any further process of law before discipline was justified—and on that issue we express no opinion—that right was certainly not "clearly established" by the time of the challenged actions. That being so, the defendant officials are entitled to qualified immunity from suit. See *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. Because no set of facts Young could prove would undermine the objective reasonableness of defendants' actions, the defense was properly granted as a matter of law and the amended complaint dismissed pursuant to Rule 12(b)(6).

Having concluded that the defendant officials are entitled to qualified immunity from suit, we need not decide whether any less than "clearly established" due process rights were violated. Accordingly, for the reasons given in this order, we hereby **AFFIRM** the decision of the district court.

---

3. Whether and how the exemption was *actually* revoked is a question we need not decide for purposes of qualified immunity analysis.

We need only be satisfied that defendants could reasonably have believed that their actions effected a valid revocation.