**State of Vermont**
**Superior Court—Environmental Division**

======================================================================
## ENTRY REGARDING MOTION
======================================================================

**In re Barefoot et al. Act 250 Application**                                    **Docket No. 46-4-12 Vtec**
**(Appeal of the District 5 Envtl. Commission determination)**

Title: Motion to Dismiss Questions on Cross-Appeal (Filing No. 4)

Filed: July 2, 2012

Filed By: Applicants Thomas Barefoot III, Joni Zweig, and True North Wilderness Program

Response filed on 7/31/12 by Interested Person Francis Kincaid (Kinny) Perot

Reply to Response filed on 8/22/12 by Applicant-Appellants

Response to Reply to Response filed 9/25/12 by Interested Person Kinny Perot

Reply to Response to Reply to Response filed 10/15/12 by Applicant-Appellants


  _X_ Granted (in part)              _X_ Denied (in part)              ___ Other

       The pending appeal concerns a project that requires both local and state land use review and approval.  While the pending appeal only concerns the latter review, we provide a bit of procedural background so that we may properly address the legal issues raised in the pending motion.

       On December 20, 2010 the Town of Waitsfield Development Review Board ("DRB") approved a permit application submitted by Applicants Tom Barefoot III, Joni Zweig, and True North Wilderness Programs, LLC ("Applicants") to operate a wilderness therapy program on a 25-acre tract owned by Mr. Barefoot and Ms. Zweig off Dana Hill Road in the Town of Waitsfield, Vermont.  The Town of Waitsfield ("Town") has not elected to conduct its development review process on the record, and no party has indicated that any record of the proceeding exists.  The DRB's decision is five pages long.  Interested Person Francis Kincaid Perot ("Ms. Perot") participated in the hearing, and did not appeal the DRB approval.

       Since the project also required approval under the state land use standards, commonly referred to as Act 250, Applicants subsequently went before the District 5 Environmental Commission ("the Commission") with a modified version[1] of the proposal.  Ms. Perot participated in the hearing and retained final party status under Act 250 Criteria 4 and 10.  The Commission denied the Act 250 application in a 22-page decision on December 30, 2011.  One of the primary reasons the Commission announced for its denial of the state land use permit application was that Applicants lacked a wastewater permit sufficient to cover the project as proposed.

_____

[1] The version of the project that Applicants presented to the Commission added a third composting toilet and a drilled drinking water well with associated piping and water storage tank.

On April 2, 2012, Applicants appealed the Commission's decision, and Ms. Perot cross-appealed on May 4, 2012. On May 24, 2012, Ms. Perot filed a motion for party status simultaneously with a multifaceted statement of 27 questions seeking party status on multiple Act 250 criteria and, if granted party status, the appellate right to challenge the proposed project's conformance to those criteria. On July 2, 2012 Applicants submitted a filing seeking to dismiss all of the questions in Ms. Perot's Statement of Questions. This filing is styled both as an "objection to Kinny Perot's motion for party status" and as a "motion to dismiss Kinny Perot's statement of questions." Applicants broadly reason that the doctrines of claim or issue preclusion obligate this Court to deny Ms. Perot party status and to dismiss all of her substantive claims, based upon the factual and legal determinations rendered in the previous municipal permit application proceeding.

Preclusion arguments in the municipal-Act 250 permitting context often arise when an applicant who was denied a permit later submits a new application for the same project. In those cases, the well established successive application doctrine functions as a form of preclusion to bar applicants from presenting new applications for the same project with only minor revisions.[2] Here, in contrast, Applicants urge us to adopt a somewhat novel preclusion theory that a determination by an appropriate municipal panel should preclude a determination by a state Act 250 district commission (and this Court, standing in its shoes as we review the Act 250 permit application *de novo*). Specifically, Applicants argue that because Ms. Perot failed to appeal the prior DRB determination approving their project, preclusion should bar her from participating in the Act 250 appeal that Applicants now bring before this Court.

Before reaching these questions, however, we regret that we must again address issues of civil procedure. Insofar as Applicants' filing was an objection to Ms. Perot's motion for party status, we decided party status issues in a separate March 13, 2013 decision. We explained that preclusion is an affirmative defense, distinct from the preliminary issue of party status, and we determined that Ms. Perot has party status to cross appeal under Criteria 1, 1(A), 1(B), 1(E), 8, 8(A), 4, and 10 only. Remaining before us are the portions of Applicants' July 2, 2012 filing that constitute a motion to dismiss Ms. Perot's substantive questions.[3] Applicants do not identify a traditional ground for dismissal, such as those found in V.R.C.P. 12(b). However, while affirmative defenses are typically inappropriate to raise in a motion to dismiss, courts may grant motions to dismiss based on preclusion where "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000). Otherwise, preclusion defenses must be proven either on summary judgment or at trial. See McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004). See also 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure §§ 4405, 1277.

## I.     Applicants' motion to dismiss Ms. Perot's Questions 11–14, 18, 19, and 23.

This case presents one of the rare instances in which we need not go beyond the face of the pleadings to conclude that the equitable defenses of claim and issue preclusion are not

---

[2] For a thorough discussion of the successive application doctrine, see In re Woodstock Cmty. Trust, 2012 VT 87, ¶¶ 4–7, __ Vt. __.

[3] Questions 11–14, 18, 19, 23, and 26 ask whether Applicants' project complies with Act 250 Criteria 1, 1(A), 1(B), 1(E), 8, 8(A), 4, and 10, respectively. Question 27 relates to the project's scope.

sufficient to dismiss Applicants' Questions 11–14, 18, 19, and 23. These Questions ask whether Applicants' project complies with Act 250 Criteria 1, 1(A), 1(B), 1(E), 8, 8(A), and 4, respectively.

Claim preclusion (res judicata) generally bars the litigation of a <u>claim</u> if there exists an earlier final judgment in which "the parties, subject matter[,] and causes of action are identical or substantially identical." <u>Russell v. Atkins</u>, 165 Vt. 176, 179 (1996) (internal citations omitted). Claim preclusion is not applicable here, because the same causes of action are not involved. The DRB could not and did not adjudicate Ms. Perot's claims that the Project violates the state standards set out in the Act 250 criteria. Rather, the DRB was limited by its jurisdiction to determining whether the proposal conformed to the applicable municipal bylaws.

Issue preclusion (collateral estoppel) bars the subsequent relitigation of an <u>issue</u> "actually litigated[4] and decided in a prior case between the parties, so long as there was a final judgment on the merits and the issue was necessary to the resolution of the [prior] action." <u>Bull v. Pinkham Eng'g Assocs.</u>, 170 Vt. 450, 461 (2000). Collateral estoppel may apply in administrative as well as judicial proceedings if certain elements are satisfied. <u>In re Central Vt. Pub. Serv. Corp.</u>, 172 Vt. 14, 21 (2001). However, it is less strictly enforced in the administrative context, with a strong focus on fairness. 2 Charles H. Koch, Jr., Admin. L. & Prac. § 5:72 (3d ed.) (WL updated Mar. 2013). Issue preclusion cannot apply where unclear findings in the decision on the prior proceeding prevent a court from determining whether an issue was "necessary to the resolution of [the] claim" in the prior proceeding. <u>State v. Carroll</u>, 171 Vt. 395, 400–01 (2000).

Issue preclusion may apply when: (1) it is asserted against one who was a party in the prior action; (2) the same issue was raised in the prior action; (3) the issue was resolved by a final judgment on the merits; (4) there was a full and fair opportunity to litigate the issue in the prior action; and (5) its application is fair. <u>Trickett v. Ochs</u>, 2003 VT 91, ¶ 10, 176 Vt. 89. No one test controls a determination of the final two criteria; the courts must look to the circumstances of each case. See, e.g., <u>Trepanier v. Getting Organized, Inc.</u>, 155 Vt. 259, 265 (1990) (listing as appropriate factors under the final two criteria the choice of forum, the incentive to litigate, the foreseeability of future litigation, the legal standards and burdens employed in each action, the procedural opportunities available in each forum, and the existence of inconsistent determinations of the same issue in separate prior cases) (citing <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 331-32 (1979)).

Categorical exceptions to preclusion exist. The Restatement (Second) of Judgments § 28(3) (1982) provides an exception where "[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them." Accordingly, the Vermont Supreme Court has been hesitant to apply issue preclusion to cases litigated in forums lacking in formality and procedural protections. See <u>Cold Springs Farm Dev., Inc. v. Ball</u>, 163 Vt. 466, 471 (1995) (declining to give preclusive effect to small claims adjudications, as doing so would be inconsistent with the simplicity and informality of small claims procedures and would chill the use of small claims courts).

---

4 In their filings, Applicants sometimes conflate claim and issue preclusion, and they appear to argue at several points that issue preclusion would apply to issues that could have been raised in the first proceeding. This is incorrect. Claim preclusion applies to claims that were raised or could have been raised, but issue preclusion applies only to issues actually litigated and decided. See <u>In re Tariff Filing of Central Vermont Public Service Corp.</u>, 172 Vt. 14, 19–21 (2001) (differentiating between claim and issue preclusion).

Perhaps most important as common law doctrines, both claim and issue preclusion must yield to a statutory command permitting relitigation. Preclusion principles do not require or even allow adherence to the first determination where a legislature has identified justifications, such as public policy, to permit a second litigation. See Restatement (Second) of Judgments § 20(1)(c) (providing that a judgment for a defendant does not bar another action by a plaintiff "[w]hen by statute or rule of court the judgment does not operate as a bar to another action on the same claim"). Even without a clear statement that preclusion does not apply, a statute may implicitly forbid preclusion. See Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104 (1991) (where federal age discrimination statute required persons to pursue state discrimination remedies before pursuing federal remedies, the statute implied that state administrative findings should not receive preclusive effect).

We now turn to the unique context of the dual-track permitting system that the Vermont Legislature enacted in 1970 in the historic land use legislation known as Act 250, which appears in 10 V.S.A. Chapter 151. See 1969, No. 250 (Adj. Sess.), § 1 (establishing that the general purpose of Act 250 is to regulate development to ensure that it does not harm the environment and that it promotes the general welfare and needs of Vermonters). Act 250 addresses projects presenting potentially significant impacts on the environment, community, and aesthetics, and it enumerates ten criteria (with multiple sub-criteria) to which such projects must conform. See 10 V.S.A. § 6081(a); see also 10 V.S.A. § 6001(3) (defining development for Act 250 purposes); 10 V.S.A. § 6086 (setting forth environmental criteria against which project's qualification for permit is assessed).

The Legislature could simply have required municipalities to incorporate the Act 250 criteria into their municipal land use review processes for major projects, but it did not do so. Instead, the Legislature created a system that, by its very design, requires a specialized Act 250 district commission to conduct an additional review of major impact development proposals. Whether the Act 250 proceeding or the municipal proceeding occurs first (and the choice is left to the applicant), the process as a whole necessarily involves reexamination of similar issues, and the potential for inconsistent determinations is inherent in—and arguably critical to—its role. Moreover, both the Act 250 and municipal application processes require public notice procedures, and both explicitly allow certain persons to formally participate in hearings and to appeal decisions. See 10 V.S.A. §§ 6084, 6085; 24 V.S.A. §§ 4461, 4464. Traditional litigation-based notions of offensive versus defensive collateral estoppel are not readily translatable to the Act 250 context, where a second proceeding must occur in any case and the players are not plaintiffs and defendants, but rather permit applicants and interested persons who have statutory standing to participate in the proceedings to protect their own particularized interests. Id.

Our Legislature anticipated the effects of overlapping jurisdiction and issues, and Act 250 addresses the question of the extent to which determinations from other decision making bodies, such as municipal panels or environmental permitting agencies, enter into the deliberations of Act 250 district commissions. See 10 V.S.A. § 6086(d); 24 V.S.A. § 4420; State of Vermont Natural Resources Board Land Use Panel Act 250 Rule 19(I). A positive determination by a municipality generally creates a "presumption that the application is not detrimental to the public health and welfare with respect to the specific requirement for which it is accepted," but the district commission must still ensure that the specific Act 250 criteria are met. 10 V.S.A. § 6086(d).

Only under certain circumstances are district commissions bound to accept determinations issued by a municipal panel, but even then, the municipal panel must make findings demonstrating compliance with Act 250, and the panel's determinations create a rebuttable presumption only to the extent that the impacts are limited to the municipality issuing the decision. See 24 V.S.A. § 4420; State of Vermont Natural Resources Board Land Use Panel Act 250 Rule 19(I).

If our Legislature did not intend for Act 250 district commissions to be bound by determinations of municipal panels, then it follows that an interested party should not be precluded from arguing that proposals fail to meet Act 250 standards, regardless of the conclusions that a relevant municipal panel may have reached in a prior proceeding, and regardless of whether the interested person chose to appeal the municipal decision.

Indeed, although collateral estoppel may apply in administrative as well as judicial proceedings if the elements are satisfied, Central Vt. Pub. Serv. Corp., 172 Vt. at 21, we have substantial concerns about the "fairness" prong of the preclusion test in light of the fact that municipal land use review panels typically employ relaxed procedural and evidentiary rules, and are often composed of laypersons with limited, if any, legal training. Municipal panel proceedings present many of the same concerns that the Vermont Supreme Court has expressed regarding small claims determinations. It is true that, unlike in the small claims context, *de novo* review of municipal decisions is available before this Court. However, forcing interested persons who participated in a municipal panel hearing to take an appeal to the Environmental Division or risk having preclusion apply against them at a future Act 250 proceeding would directly contravene long-standing principles of encouraging public participation in state and local land use deliberations.

Finally, even if a municipal panel proceeding could have preclusive effect, it would not apply here. First, the DRB decision examined the propriety of Applicants' proposed two tents, a yome,[5] and a composting toilet, while the District Commission considered the project's original components in addition to a third composting toilet and a drinking water well with associated piping and a water storage tank, without wastewater permits corresponding to the revised project description. Thus, even a prior DRB determination about the originally proposed project would not preclude Ms. Perot from raising her concerns about the modified project as presented to the District Commission. Second, there is no record from the DRB proceeding presented to us in this appeal, and the board's five page decision (only two pages of which are devoted to findings of fact and conclusions of law) does not provide sufficient information to reveal whether issues specific to the Act 250 criteria were decided, much less whether they were necessarily decided.

This reasoning applies generally to all of Applicants' challenges to Appellant's right to request review under the specified criteria. However, for purposes of illustration, we offer the following example using Act 250 Criterion 1 to show how the DRB decision does not provide enough detail to satisfy this Court that the DRB reached conclusions about the specific elements of Act 250, nor whether and such conclusions were necessary to its decision to approve the project. Criterion 1 requires the District Commission to find that the proposed development

---

[5] The Court understands that a yome is a yurt-like structure, sometimes made of cloth and shaped in part like a geodesic dome. Applicants describe a yome as a "round tent structure" in Question 1 of their Statement of Questions, filed April 23, 2012.

"[w]ill not result in undue water or air pollution."   10 V.S.A. § 6086(a)(1).   To determine compliance with Criterion 1, a reviewing body must at least consider:

> the elevation of land above sea level; and in relation to the flood plains, the nature of soils and subsoils and their ability to adequately support waste disposal; the slope of the land and its effect on effluents; the availability of streams for disposal of effluents; and the applicable health and environmental conservation department regulations.

10 V.S.A. § 6086(a)(1).  Although the DRB decision contains one finding of fact as to the parcel's elevation above sea level, it is not clear from the decision that the DRB made particular determinations as to the other factors or that any determination reached regarding those factors was necessary to its decision to approve the project under municipal standards.

In conclusion, we see little case law[6] in the over forty years since the enactment of Act 250 to persuade us that it would be appropriate to apply preclusion principles to generally tie the hands of the state district commissions (or this Court standing in their shoes) based on prior determinations of municipal panels, or that persons qualifying as interested parties before a district commission may not raise arguments that they had made in the less formal setting of a municipal permit hearing, even where they chose not to appeal the municipal determination. Furthermore, it is clear from the face of the DRB and District Commission decisions that preclusion would not apply here in any case, both because of the changes in project description between the DRB and the Act 250 proceedings and because the record of the DRB decision is insufficient to satisfy this Court that issues relevant to Act 250 Criteria 1, 1(A), 1(B), 1(E), 8, 8(A) and 4 were decided in the first proceeding, much less necessarily so.   Thus, we **DENY** Applicants' motion to dismiss Ms. Perot's substantive Questions 11–14, 18, 19, and 23, as we find that neither claim nor issue preclusion applies in the current appeal.

## II.        Applicants' motion to dismiss Ms. Perot's Question 26.

Ms. Perot's Question 26 asks whether the Project complies with Act 250 Criterion 10, and Applicants argue that claim or issue preclusion bars this question as well, particularly in light of In re Hartland Group, 2008 VT 92, 184 Vt. 606.   In Hartland, the Vermont Supreme Court affirmed a 2006 decision by Judge Merideth Wright, who, in a brief section of a lengthy and complex decision, accepted one party's argument that a district commission decision determining that a project was "in conformance" with a town plan could fairly preclude the argument that the project was not "in substantial conformance" with the town plan, as required by municipal bylaws.   In re Hartland Group, No. 120-6-05 Vtec, slip op. at 26 (Vt. Envtl. Ct. Dec. 14, 2006).  Judge Wright rejected the argument that preclusion applied to the other Act 250 criteria at issue in that case.   Id.   On appeal to the Vermont Supreme Court, the Hartland appellants did not raise the fourth or fifth prongs of the collateral estoppel test; the only issue on appeal was whether "the requirements for conformance with the city's municipal plan under Act 250 and the zoning ordinance present[ed] the same issue."   In re Hartland Group, 2008 VT

---

[6]  Indeed, one case on point, In re Rinker's Inc., No. 303-1-8 Vtec (Vt. Envtl. Ct. 2009) (Wright, J.), demonstrates how applying preclusion principles across municipal and Act 250 standards could significantly complicate and slow the land use review process.  Additionally, and in light of our analysis here, we disagree with Judge Wright's statement, in dicta, that specific factual findings by municipal panels are precluded from being litigated before the district commissions.  Doing so would contravene Act 250's purpose of providing state review of projects in addition to local review of proposed projects.

92 at ¶ 7. The Court reasoned that because a project could not simultaneously be "in conformance" with the municipal plan but not "in substantial conformance" with it, Judge Wright's application of preclusion was not clearly erroneous, arbitrary, or capricious. Id. at ¶ 8.

We begin by observing that <u>Hartland</u> addressed the narrow issue of whether an <u>Act 250 district commission</u> decision on Criterion 10 could preclude a <u>municipal panel</u> decision under similar standards; this is the opposite of the situation presented by the application now before us in this appeal. As explained above, we have significant policy-based concerns about applying the common law equity doctrine of preclusion to give a DRB decision preclusive effect over parties in an Act 250 permit proceeding. Nonetheless, because of the precedent from <u>Hartland</u>, which we read narrowly to encompass only the issue of Criterion 10 conformity with a municipal plan, we distinguish Ms. Perot's Question 26 from her other questions. We cannot, however, answer Applicants' motion to dismiss Question 26 on the grounds of the affirmative defense of issue preclusion, because it is not clear from the face of the parties' respective Statements of Question in conjunction with matters of which this Court may take judicial notice whether preclusion applies. If it is to be argued, the preclusion defense must be proven either on summary judgment or at trial. See <u>McKenna v. Wright</u>, 386 F.3d at 432; 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure §§ 4405, 1277.

This Court has already issued three entry orders on preliminary matters raised under both sides' complicated approach to principles of civil procedure. Cognizant of our mandate to construe this Court's rules "to ensure summary and expedited proceedings consistent with a full and fair determination in every matter coming before the court" (V.R.E.C.P. 1), we believe that, rather than denying the motion, a more expeditious process would be to provide Applicants with an opportunity to petition this Court to convert the pending motion to one for summary judgment, as is authorized when a party arguing for dismissal under V.R.C.P. 12(b)(6) presents matters beyond the pleadings.[7] We decline to convert the motion *sua sponte*, as Applicants may prefer under the circumstances simply to argue the matter at the merits hearing or may decline to pursue the argument further. If Applicants petition to convert the motion to dismiss Question 26 to a motion for summary judgment on Question 26, VRCP 12(b) provides that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Since the issues have been extensively briefed,[8] we believe that 20 days should be sufficient for all parties to present additional materials made relevant by the conversion from a motion to dismiss to a motion for summary judgment.

### III.    Ms. Perot's Question 27.

Question 27 asks whether the Project "consists of '3 composting toilets, 2 tent platforms, and 1 yome (round tent structure) for use by small backpacking groups of 6 students and 2 field guides,' as defined in the applicants/appellants' April 23, 2012 statement of questions." (Ms. Perot's Statement of Questions at 4, filed May 24, 2012.) We first note that it is the project

---

[7]    Here, both parties in their filings ask this Court to consider matters beyond the pleadings in deciding whether preclusion applies to the issue of conformance with the town plan.

[8]    In this case, the parties collectively have already submitted over fifty pages of filings devoted, in large part, to the preclusion question, and they have also supplemented those filings with additional evidence for this Court's consideration.

application under appeal that defines the scope of a project,[9] not an applicant's Statement of Questions. Ms. Perot's Question 27 appears to merely repeat some of the project descriptions presented, not in Applicants' application, but rather, in their Statement of Questions. Thus, Question 27 does not appear to raise any legal issue for this Court to address and therefore presents no factual or legal issues for our determination. We therefore **GRANT** Applicants' motion to dismiss Question 27.

## IV.    Conclusions.

For the reasons explained above, we **DENY** Applicants' motion to dismiss Questions 11–14, 18, 19, and 23, and we **GRANT** Applicant's motion to dismiss Question 27. As to Question 26, we direct Applicants to notify this Court, no later than **Thursday, April 18, 2013**, of whether they intend to proceed on the merits or whether they wish to petition this Court to convert their current motion to one for summary judgment. If Applicants choose the latter course, we direct that Applicants file any additional memoranda and affidavits in support of their summary judgment request no later than **April 18th,** and will thereafter afford all other parties 20 days of additional time (i.e., by no later than **May 8, 2013**) to  present pertinent materials pursuant to V.R.C.P. 12(b) and 56.

Finally, we note that the Court placed on inactive status a related appeal concerning an approval by the Vermont Agency of Natural Resources ("ANR") for a wastewater and water supply permit for an earlier version of Applicants' project (In re Barefoot & Zweig WW Permit Application Appeal, No. 36-3-11 Vtec), pending the outcome of decisions on the motions pending in this appeal. Since we have now addressed all motions pending in this Docket (No. 46-4-12 Vtec), Docket No. 36-3-11 Vtec is hereby **REACTIVATED**. We direct that Applicants advise the Court, again by no later than **April 18th**, as to whether they intend to pursue approval of this permit application in that de novo appeal, or whether they intend to submit a revised application to ANR for wastewater and water supply approval of their project as now composed, thereby rendering Docket No. 36-3-11 Vtec ripe for voluntary dismissal.

_____          _____April 5, 2013_____
        Thomas S. Durkin, Judge                                    Date

============================================================================

Date copies sent: _____                                    Clerk's Initials _____

Copies sent to:

  Attorney Geoffrey H. Hand for Applicants Thomas Barefoot III, Joni Zweig, and True North Wilderness Program
  Attorney Rebecca Boucher, Co-Counsel for Applicants
  Attorney Catherine Gjessing for Interested Person Agency of Natural Resources
  Attorney David Grayck for Cross Appellant Frances Kincaid Perot
  Attorney Peter Gill for Interested Person Natural Resources Board/LU Panel

---

[9]    Here, the project application under appeal is Applicants' Act 250 Land Use Permit Application, dated May 9, 2011. This application seeks a permit for two as-built tent platforms to be relocated, two as-built composting toilets, an as-built 20' diameter yome, a third composting toilet to be constructed, and a new well for drinking water, along with associated piping and a storage tank.